UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THE UNITED STATES OF AMERICA, for the use and benefit of PRN ASSOCIATES, INC.,

Plaintiff,

v.

K & S ENTERPRISES, INC., MID-STATE SURETY CORPORATION and FOLKSAMERICA REINSURANCE COMPANY,

Defendants.

CASE NO. 1:04-cv-0470-DFH-JMS

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff PRN Associates, Inc. ("PRN") has sued under the civil remedy provisions of the Miller Act, 40 U.S.C. § 3133(b), to recover from the general contractor's sureties a debt that PRN says the general contractor owes it for work done on a federal government construction project. The matter was tried to the court. The court now states its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The weight of evidence shows that the suit was not filed within the one-year time limit under the Miller Act and must be dismissed. See 40 U.S.C. § 3133(b)(4).

*Findings of Fact*

In the autumn of 2001, the Indiana National Guard entered into an agreement with defendant K&S Enterprises, Inc. to update the telephone system

at Camp Atterbury in Indiana. As required by the Miller Act, 40 U.S.C. § 3131(b), K&S furnished a payment bond on the project to protect subcontractors who supplied material and labor. The bond was issued by defendants Mid-States Surety Corporation and Folksamerica Reinsurance Company.

On November 7, 2001, K&S contracted with PRN for $260,000 for consulting services on the project, including project management, quality control, and quality assurance. See Ex. 1. On November 8, 2001, K&S contracted with Clawson Communications, Inc. to do most of the physical work on the Camp Atterbury telephone project for $517,000. See Ex. 8.

On November 19, 2001, Dilip Shah, the principal owner of PRN, entered into a consulting agreement with Clyde Fisher to provide the consulting services that PRN had agreed to provide to K&S on the Camp Atterbury telephone project, but for only $80,000. Ex. 10. The November 19, 2001 Fisher contract is clearly between Fisher and Shah as an individual, not with PRN. On April 5, 2002, Fisher and Shah signed a different version of the contract, dated November 20, 2001, which was between Fisher and PRN. Ex. 4.

Acting on behalf of PRN and/or Shah, Fisher provided on-site management, supervision, and inspection services from November 20, 2001 through December 27, 2002. Fisher returned to Camp Atterbury for a meeting on January 16, 2003 to discuss some problems with some of the communications

cable splices that had been done as part of the project. Sometime in the spring of 2003, Fisher made one more visit to Camp Atterbury to meet with Indiana National Guard officers and others to inspect and repair a splice case that had leaked because of a faulty seal.

On December 27, 2002, Fisher sent an invoice to PRN for $27,760.43. Ex. 6. His invoice stated that he was then owed 100 percent of the total contract amount, plus an additional amount for two modifications to the contract. His invoice also stated that the most recent progress report to the Indiana National Guard showed that work on the project was 100.74 percent complete. (The evidence does not explain the extra 0.74 percent.) PRN did not pay that invoice promptly. On March 10, 2003, Fisher sent a letter to the two sureties (with copies to PRN and K&S) to file a claim under the Miller Act surety bond. He stated: "My work on this contract has been completed, and has been invoiced, but the last invoice has not been paid and I am still owed $27,760.43." Ex. 12.

On March 25, 2003, Fisher signed an affidavit of claim stating that he had furnished services to both PRN and K&S "between the dates of 11-20-2001 and 12-27-2002." Ex. 7.[1] His affidavit claimed a right to payment of the entire sum due to him under the applicable contract(s) because the work had been completed.

---

[1]Fisher was required to provide such notice of a claim "within 90 days from the date on which the person did or performed the last of the labor. . . ." 40 U.S.C. § 3133(b)(2). March 25, 2003 was 90 days after December 27, 2002, the date that Fisher repeatedly said was the date he completed his work.

On May 2, 2005, Fisher signed an affidavit in this action stating in part: "My last day on the Project site working on behalf of PRN was on or about January 16, 2003." Ex. 13. Fisher was eventually paid all sums due to him, though the record does not show clearly who paid him.

Fisher, Jon McNabb of the Indiana National Guard, and David Spalding of Clawson Communications testified that Fisher made one more visit to Camp Atterbury in late spring of 2003. The visit was not documented in the evidence. The closest anyone could come to dating the visit was Fisher's recollection that he went hunting for morel mushrooms the same day after his visit to Camp Atterbury. A splice case installed by Clawson and inspected by Fisher had failed. Spalding, McNabb, Fisher, and perhaps a Mr. Engleking were present to address the problem, and they fixed it that day. Spalding described the work as a warranty issue, and the court agrees with that characterization. The new telephone equipment had been in operation since December 2002. When it failed, the Indiana National Guard turned to the contractors to fix the problem. They did so. There is no indication that there was any additional invoice for the work or even that the repair was documented. All evidence about the repair is from the oral testimony.

On March 13, 2003, PRN submitted to K&S and the sureties a claim under the Miller Act for $102,000.00 plus interest. Ex. 3. K&S and the sureties did not pay, and PRN filed this action under the Miller Act on March 11, 2004.

*Conclusions of Law*

This court has jurisdiction over the subject matter and the parties. The Miller Act requires a person who contracts to provide more than $100,000 worth of construction, alteration, or repair work on federal government property to furnish performance and payment bonds. 40 U.S.C. § 3131(b). State statutory mechanic's liens may not attach to federal government property. See *F.D. Rich Co. v. U.S. for Use of Industrial Lumber Co.*, 417 U.S. 116, 122 (1974). The Miller Act therefore provides financial protection for contractors who supply labor and material for federal construction projects. Suppliers of labor and material who are not paid may claim against the general contractor's payment bond. A supplier of labor or material who has not been paid may then file a civil action in a federal district court. 40 U.S.C. § 3133(b). The Miller Act provides a time limit for filing such an action: "An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

PRN filed this action within one year after it submitted its notice of claim, but it did not file this action when the Miller Act required, within one year "after the day on which the last of the labor was performed." This suit is untimely under all four of Fisher's different written submissions – the December 27, 2002 invoice, the March 10, 2003 notice of claim, the March 25, 2003 affidavit, and the May 2, 2005 affidavit. The first three of those stated that his last day of work was December 27, 2002. The fourth tried to stretch the time out until January 16,

2003, when Fisher returned to Camp Atterbury to meet with the Indiana National Guard about a problem with the work that had been completed. Both dates were more than one year before PRN filed this suit.

To avoid a finding that the suit is untimely, PRN argues (a) that Fisher and thus PRN provided additional labor later in the spring of 2003, within the one-year limit, and (b) that defendants waived the timeliness issue by failing to plead it as an affirmative defense in their answer. Neither argument is persuasive.

The late spring 2003 repair clearly falls within the category of warranty or repair work that could not extend the Miller Act deadline. Case law under the Miller Act establishes that such repair work to comply with warranties on already completed work does not extend the deadline for filing suit for failure to pay on the completed work. *U.S. for Use and Benefit of Interstate Mechanical Contractors, Inc. v. International Fidelity Ins. Co.*, 200 F.3d 456, 460 (6th Cir. 2000) (adopting majority rule among circuits: "remedial or corrective work or materials, or inspection of work already completed, falls outside the meaning of 'labor' or 'materials'" and will not toll the one-year limit); *U.S. for Use and Benefit of Olson v. W. H. Cates Const. Co.*, 972 F.2d 987, 991 (8th Cir. 1992) (plaintiff must show his work was "performed . . . in connection with the completion of the project and not for the purpose of correcting defects"), quoting *U.S. for Use and Benefit of Austin v. Western Electric Co.*, 337 F.2d 568, 572-73 n. 12 (9th Cir. 1964) (issue is whether work was performed "as a part of the original contract or for the purpose of

correcting defects, or making repairs following inspection of the project"); *U.S. ex rel. Noland Co. v. Andrews*, 406 F.2d 790, 792 (4th Cir. 1969) (same).

The work done in Fisher's late spring visit was not the completion of work that had been left undone, as was the case in *Noland Co.*, 406 F.2d at 792 (work to install two missing valves that should have been installed before completion was completion work, not repair or warranty work). The new telephone equipment at Camp Atterbury had been installed and inspected and had been operating since December 2002. The system had a defective splice case that the visitors repaired in that late spring visit. That was clearly repair work, done long after Fisher had said he had completed his work. These facts therefore are closer to those in *Interstate Mechanical Contractors*, where the equipment in question had been inspected and approved once, and a second round of testing later discovered problems that required corrections, and another round of testing was required. The Sixth Circuit held that the testing of the replacement equipment was repair or warranty work that did not extend the time limit. 200 F.3d at 460-61.[2]

PRN suggests that because it was required to make Fisher available under the contract to carry out repairs of defective work, any work done by Fisher should

---

[2]Even under the test advocated by Judge Moore in dissent in *Interstate Mechanical Contractors*, PRN's suit was filed too late. Fisher repeatedly indicated that he had completed his work under the contract months before the late spring repair work. See 200 F.3d at 463 (Moore, J., dissenting) (proper approach to the problem is to determine whether work at issue is warranty work or work conducted prior to contract completion).

count as "labor" that should serve to extend the Miller Act deadline. That argument runs contrary to the weight of authority, such as those cited above. Accepting PRN's argument would also undermine the Miller Act's deadlines. As the Sixth Circuit explained in *Interstate Mechanical Contractors*, extending the statutory term "labor" to apply to any contractual duties, including those required under warranty provisions, would extend the intentionally short statute of limitations for years, past the end of any applicable warranty period. 200 F.3d at 461.

The differences between Fisher's trial testimony and his prior statements and prior sworn affidavits on this subject present an interesting credibility issue. The court finds that Fisher actually made the visit to Camp Atterbury in late spring 2003 to address defective work that he had previously supervised and inspected. The nature of that visit – an undocumented afterthought to correct a minor problem – is entirely consistent with Fisher's repeated statements that he had completed his work (and was entitled to be paid all sums due to him) no later than December 27, 2002. The differences between Fisher's trial testimony and his prior written statements and affidavits thus only emphasize that the temporarily forgotten visit in late spring was for repair and warranty work.

Defendants did not waive the timeliness issue by failing to plead in their answer an affirmative defense under the statute of limitations. Controlling Seventh Circuit precedent treats the one-year time limit under the Miller Act as

a condition precedent to suit, so that the burden is on the plaintiff to plead and prove compliance with the time limit: "The statute is remedial and to be liberally construed, but the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." *U.S. for Use and Benefit of Material Service Division of General Dynamics Corp. v. Home Indemnity Co.*, 489 F.2d 1004, 1005 (7th Cir. 1973); accord, *Fleisher Engineering & Construction Co. v. U.S. for Use and Benefit of Hallenbeck*, 311 U.S. 15, 17 (1940) (treating Miller Act's time limit for giving notice to contractor as condition precedent to suit, but finding that substantial compliance with requirements for manner of giving notice was sufficient); *U.S. for Use of Celanese Coatings Co. v. Gullard*, 504 F.2d 466, 468-69 (9th Cir. 1974) (time limit is condition precedent that plaintiff must plead and prove); *U.S. for Use of Soda v. Montgomery*, 253 F.2d 509, 512 (3d Cir. 1958) (same); *U.S. ex. rel. N.E.W. Interstate Concrete, Inc.v. EUI Corp.*, 93 F. Supp. 2d 974, 977 (S.D. Ind. 2000) (Tinder, J.) (time limit for notifying general contractor is condition precedent that plaintiff must plead and prove).[3]

PRN argues that more recent case law treats the time limit as a statute of limitations defense that the defendant must plead and prove. Despite PRN's references to the "bulk of the cases," the support for this assertion boils down to only *U.S. ex rel. Automatic Elevator Co. v. Lori Construction*, 912 F. Supp. 389, 399

[3]The Ninth Circuit in *Celanese Coatings* also described the time-limit as "jurisdictional," 504 F.2d at 468, but used the term somewhat loosely. The time limit is not jurisdictional in the sense that the court lacks subject matter jurisdiction over the case.

(N.D. Ill. 1996). In *Automatic Elevator*, the court correctly rejected the suggestion that the Miller Act's time limit affected subject matter jurisdiction. In dismissing the case as untimely, the court wrote that the issue was an affirmative defense. In dismissing the case, however, the *Automatic Elevator* court did not actually need to decide the issue presented here, distinguishing between a condition precedent that the plaintiff must plead and prove and an affirmative defense that the defendant must plead and prove. See 912 F. Supp. at 399 (granting summary judgment dismissing action as untimely based on undisputed facts). The *Automatic Elevator* court also did not address the Seventh Circuit's opinion in *General Dynamics* treating compliance with the time limit as a condition precedent. This court must follow the Seventh Circuit on the issue. Defendants did not waive the issue in this case by failing to plead an affirmative defense that the suit was filed too late.[4]

Even if the Seventh Circuit or the Supreme Court were to rule now that the Miller Act's time limit should be treated as an affirmative defense, the court finds that defendants were entitled to raise the issue at the time of trial. The defendants could rely on existing Seventh Circuit precedent, and in any event an

---

[4]On this issue, PRN also cites an unpublished and non-precedential decision from the Tenth Circuit, *U.S. ex rel. Noyes v. Kimberly Construction, Inc.*, 43 Fed. Appx. 283, 287 (10th Cir. 2002), which cited *Automatic Elevator* on the point and did not cite the other circuit court decisions to the contrary. PRN also cites *U.S. for Use and Benefit of Skip Kirchdorfer v. M.J. Kelley Corp.*, 995 F.2d 656, 659 (6th Cir. 1993), which held that the one-year limit was subject to equitable tolling but did not address the distinction between an affirmative defense and a condition precedent that the plaintiff must plead and prove. There is no basis for equitable tolling in this case.

amendment under Rule 15(b) of the Federal Rules of Civil Procedure to conform to the evidence would be appropriate. PRN could not assume that it had no obligation to address the issue, especially in light of the Seventh Circuit's decision in *General Dynamics*. Though neither side did much discovery on the issue, neither has identified any additional facts or any additional needed discovery, nor shown any unfair prejudice resulting from the court's consideration of the issue. The issue was fully tried and was not waived.

Because the evidence shows that the suit was barred by the one-year time limit for filing suit under the Miller Act, the court does not address the other issues the parties have raised, including whether PRN's management, supervisory, and inspection services amounted to "labor" within the scope of the Miller Act, and whether the confusion about whether Fisher contracted with PRN or with Shah in his individual capacity poses an obstacle to recovery. The court will enter final judgment dismissing the action with prejudice.

So ordered.

Date: March 27, 2007

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Sean Thomas Devenney
DREWRY SIMMONS VORNEHM, LLP
sdevenney@drewrysimmons.com

Joseph M. Leone
DREWRY SIMMONS VORNEHM, LLP
jleone@drewrysimmons.com

Thomas A. Pastore
PASTORE & GOODEN
tpastore@pastoregooden.com